## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALLIANCE FOR GLOBAL JUSTICE,
ET AL.,**
     **Plaintiffs,**

     **v.**

**DISTRICT OF COLUMBIA, ET AL.,**
     **Defendants.**

**Civil Action No. 01-00811**

**(PLF/JMF)**

## MEMORANDUM OPINION

This case has been referred to me by Judge Friedman pursuant to LCvR 72.2(a) in order

to resolve defendant's Motion for a Protective Order [#178] ("Def.'s Mot. Protective Order").

For the reasons stated herein, defendant's motion is granted.

## BACKGROUND

Plaintiffs' claims in this case arise from the actions taken by District and federal law

enforcement personnel in response to demonstrations surrounding the IMF and World Bank

meetings in Washington, DC in April 2000.  Def.'s Mot. Protective Order at 2.

Plaintiffs have issued a notice of deposition to the Mayor of the District of Columbia,

Anthony A. Williams, to appear for deposition.  Id. at 1.  Mayor Williams is not a party to this

action in either his official or personal capacity.  Id.  Plaintiffs seek the Mayor's deposition

because "he is directly responsible for the practices and customs that caused the mass arrests and

other protest related violations," and he is *the top policy maker and has expressly approved of,*

*and is personally involved in the maintenance of, the unconstitutional anti-free speech practices*

1

at issue in this litigation." Plaintiffs' Opposition to the Motion for a Protective Order ("Pls.'

Opp'n") at 3.  In response, defendant has filed a motion for a protective order in order to prevent

the Mayor from being deposed.  Defs.' Mot. Protective Order at 1.

## DISCUSSION

### I.    Legal Standard

In general, "a party is entitled to depose a witness on all relevant issues to which the

witness has knowledge." Alexander v. F.B.I., 1, 3 (D.D.C. 1998) (citation omitted).  However,

"[c]ourts have consistently recognized the undue burden that falls on public officials as a

consequence of compulsion to attend depositions."  Springfield Terminal Ry. Co. v. United

Transp. Union, Civ. No. 89-0073, 1989 WL 225031, at *2 (citing Cmty. Fed. Sav. & Loan Ass'n

v. Fed. Home Loan Bank Bd., 96 F.R.D. 619 (D.D.C. 1983); Peoples v. United States Dep't of

Agric., 427 F.2d 561, 567 (D.C. Cir. 1970); Capitol Vending Corp. v. Baker, 36 F.R.D. 45, 46

(D.D.C. 1964)).

As a result of this undue burden, courts have offered special protections to high-ranking

government officials.  "There is substantial case law standing for the proposition that high-

ranking government officials are generally not subject to depositions unless they have *some*

personal knowledge about the matter and the party seeking the deposition makes a showing that

the information cannot be obtained elsewhere." Alexander, 186 F.R.D. at 4 (citations omitted).

Courts have carved out this special rule for high-ranking government officials because, if they

did not, "we would find that heads of government departments and members of the President's

Cabinet would be spending their time giving depositions and would have no opportunity to

perform their functions." Capitol Vending Corp., 36 F.R.D. at 46.

When moving for a protective order to limit discovery, the movant must establish good cause "by demonstrating the specific evidence of the harm that would result." Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001).  The burden is on the movant to establish that a protective order should be granted.  Fonville v. District of Columbia, No. CIV. A.02-2353, 2005 WL 1244816, at *1 (D.D.C. May 25, 2005).  Furthermore, a party seeking a protective order prohibiting deposition testimony must establish a specific need for protection, as opposed to simply making conclusory or speculative statements.  Alexander, 186 F.R.D. at 75 (citations omitted).[1]

## II.    Analysis

Defendant argues that plaintiffs have not shown "exceptional or extraordinary circumstances" that would permit the deposition of a high-ranking government official.  Def.'s Mot Protective Order at 4.  Furthermore, defendant argues that there is no need to depose the Mayor based on plaintiffs' late request for the deposition and their failure to seek the Mayor's deposition in a similar case.  Id. at 9-10.  Specifically, defendant notes that plaintiffs made no effort to depose the Mayor in the first four years of litigation and only moved to depose the Mayor after the court's latest extension of the discovery period.  Id. at 9.  Defendant also argues that plaintiffs have not sought the Mayor's deposition in another civil action regarding constitutional violations related to policing of mass demonstrations in the District, demonstrating no real need for the deposition in this case.  Id. at 10.

Plaintiffs argue that the Mayor has approved and was personally involved in the District's

---

[1] Good cause exists under Fed. R. Civ. P. 26(c) when justice requires the protection of a person from annoyance, embarrassment, oppression, or undue burden or expense.

response to the April 2000 protests at issue.  Pls.' Opp'n at 3.  Plaintiffs base their assertions on the Mayor's public statements and interviews regarding the arrests.  Id.  Under the theory of municipal liability, plaintiffs seek to demonstrate that the Mayor, through a decision or the ratification of a decision, authorized the conduct that characterized the response to the demonstrations.  Id. at 4.

The first issue is whether Mayor Williams qualifies as a high-ranking government official entitled to the special protections afforded to such individuals.  Based on the pleadings, it appears that plaintiffs have conceded this point.  Even if this is not the case, the court finds that Mayor Williams is a high-ranking government official entitled to special protections from deposition.

While most of this circuit's case law regarding special protections for high-ranking government officials deals with agency heads, the rationale underlying the protections applies to the Mayor of the District of Columbia.  If the Mayor was subject to constant deposition regarding his duties as Mayor, his ability to perform his functions would be severely impaired.  This rationale may not apply to some mayors, especially mayors of small towns.  However, in the case of the District of Columbia, a major metropolitan area and the capital of the nation, this reasoning applies.

Plaintiffs must therefore show that: (1) the Mayor has some personal knowledge of the events at issue and (2) the information cannot be obtained elsewhere.  See Alexander, 186 F.R.D. at 4.  Plaintiffs rely on Mayor Williams' public comments regarding the arrests surrounding the demonstrations in order to establish some personal knowledge.  Pls.' Opp'n at 8-9.  Plaintiffs conclude that, since the Mayor spoke publicly defending the arrests at the April 2000 demonstrations, he possesses discoverable information and knowledge, including

4

communications with top D.C. policy makers regarding the demonstrations.  Id. at 3.

Plaintiffs further submit that the "Mayor is an indispensable witness to the claim of municipal liability."  Id.  Based on the theory of municipal liability, plaintiffs seek to demonstrate that the police response to the demonstrations was the official policy of the District of Columbia, approved by the Mayor  Id. at 4.  Plaintiffs claim that municipal liability can be established through a decision, or ratification of a decision or conduct, by the Mayor, a policy maker.  Id. Confirmation of the Mayor's approval and ratification of the police response to the demonstrations is thus the purpose of the deposition inquiry.  Id. at 5.  Plaintiffs also seek to question the Mayor regarding what they see as his knowledge of, and failure to respond to, other unconstitutional practices.  Id. at 6  Plaintiffs claim that only the Mayor himself "can testify to his personal knowledge of events.  Only he can explain why he has chose to take the actions, or no action, that he has."  Id. at 12.

The court need not address whether the Mayor has the requisite personal knowledge to be deposed, as it is clear that plaintiffs have made no showing that the information they seek cannot be obtained elsewhere.

It bears emphasis that there can be only three ways in which the deposition of the Mayor might aid the plaintiffs in establishing the municipal liability of the District of Columbia for the actions taken by the police during the demonstrations: (1) that, in advance of the demonstrations, the Mayor was presented with the police's intended response to the demonstrators' activities and approved them; (2) that, after they occurred, the Mayor became aware of what the police had done and expressed his approval, thereby ratifying the behavior that the demonstrators condemn as illegal and unconstitutional; (3) that the police acted in a similar fashion in demonstrations that

occurred before or even after the demonstration at issue and the Mayor expressed his approval of their behavior or did nothing to change or modify it.

Simply put, there is no showing that plaintiffs have addressed any discovery whatsoever to any of these three categories.  They do not claim that they propounded interrogatories or admissions demanding to have the Mayor acknowledge or admit that he was given prior notice of what the police intended to do and approved it.  Nor do they show that they have propounded discovery as to whether the Mayor ratified what the police did in this case or approved similar behavior in other cases.  Finally, plaintiffs make no claim that any of the information they have received in response to other discovery or during other depositions has created any ambiguity as to the Mayor's position on these issues.  On this record, I would be ordering a deposition without any showing whatsoever that the information plaintiffs seek cannot be obtained by other means.  This, I cannot do. See Alexander, 186 F.R.D. at 4.

For the reasons stated above, defendant's motion for a protective order is granted.  An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: