# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE FOR GLOBAL JUSTICE, *et al.*,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>　　Defendants. | Civil Action No. 01-811　(PLF/JMF) |

## REPORT AND RECOMMENDATION

　　Before me is <u>Federal Defendants' Motion for Summary Judgment</u> [#202], which was filed by the remaining federal defendants, the United States, the Federal Bureau of Investigation ("FBI"), the United States Secret Service, and the United States Capitol Police.

　　The federal defendants, believing that the plaintiffs were seeking monetary damages, devote a substantial portion of their motion to arguing that the action is barred by sovereign immunity. Plaintiffs, in response, deny that they seek any form of monetary damages. Indeed, they make clear that the relief they seek is narrow.

　　First, plaintiffs' case is predicated on the asserted involvement of the FBI in a fire inspection by the District of Columbia of a "Convergence Center" where they and their fellow protestors assembled before they engaged in a demonstration in the District of Columbia during the spring meeting of the World Bank in 2000. They ask only that the court find that the FBI caused the District of Columbia to conduct the inspection as a pretext and declare that the FBI's conduct violated their constitutional rights.

Second, the plaintiffs were arrested by the District of Columbia Metropolitan Police Department and demand that the federal agencies who remain in the case be ordered to expunge any arrest records that they may have of plaintiffs' arrests and what plaintiffs call "derivative records, including intelligence records . . . ." <u>Opposition to Federal Defendants' Motion for Summary Judgment</u> at 22.[1]

For the reasons stated in this Report and Recommendation, I first recommend that the defendants' motion for summary judgment be denied without prejudice and that the Court conclude that plaintiffs' demand for declaratory relief does not present a case or controversy within this Court's jurisdiction and, therefore, should be dismissed. I then recommend that plaintiffs' demand for the expungement of arrest and "derivative records" await the resolution of whether the arrests in this case were illegal. In my view, plaintiffs' securing a determination that their arrests were illegal is a prerequisite to the proceeding of their equitable relief claim against the federal defendants.

## ANALYSIS

If plaintiffs' allegations are credited, they will have established that they and many others assembled in the District of Columbia to demonstrate at the World Bank's spring meeting in 2000. They met at a building called the "Convergence Center." According to plaintiffs, the FBI Joint Terrorism Task Force placed this building under 24-hour surveillance to secure a warrant to search it and, "ultimately, to disrupt protestors' activities therein." Opp'n at 8. Plaintiffs then allege that the FBI, unable to establish probable cause to get a warrant, circumvented it by having FBI agent Chris Coombs ask the District of Columbia Fire Department to inspect the

---

[1] Hereinafter "Opp'n."

Convergence Center for fire code violations. Id. at 9. On the morning of the first day of the planned demonstration, the Fire Department did so, and, having found violations, closed the Convergence Center, leaving the arriving demonstrators with no central place to meet. Id.[2]

Plaintiffs then point to indications that the FBI is using what occurred at the Convergence Center as a model in internal documents and in presentations to state and local law enforcement agencies. Id. at 19-20. They insist the "chilling effect caused by widespread knowledge" of how the District of Columbia Fire Department closed the Convergence Center can only be eliminated by their securing a declaration that what the FBI did in the District of Columbia was unconstitutional. Id. at 21.

### *Declaratory Judgment*

The court is obliged to determine, *sua sponte*, whether it has jurisdiction. Fed. R. Civ. P. 12(h)(3). The statute granting the United States District Courts' the power to issue declaratory judgments did not expand their jurisdiction, which is still limited to resolving only actual cases and controversies. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). As the court of appeals has explained:

> As an "irreducible constitutional minimum," a plaintiff seeking to demonstrate standing "must have suffered an 'injury in fact'- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted). Moreover, that injury must be "fairly traceable" to the defendant's conduct and likely to be "redressed by a favorable decision." *Id.* at 560-61, 112 S.Ct.

---

[2] Plaintiffs also that allege that, during the inspection that lead to the closing of the Convergence Center, materials that they intended to use to create signs and other tactile indications of their protest were taken, ruined or destroyed. Opp'n at 9 n. 4.

3

2130 (internal quotation marks and alterations omitted).

Worth v. Jackson, 451 F.3d 854, 858 (D.C. Cir. 2006). To that end, the Supreme Court has held that the federal courts may not entertain an attack upon the constitutionality of a law enforcement practice unless there is an immediate threat that the practice will be applied to the plaintiff. Los Angeles v. Lyons, 461 U.S. 95 (1983); Rizzo v. Goode, 423 U.S. 362 (1976); O'Shea v. Littleton, 414 U.S, 488 (1974). The Supreme Court has said of the three cases just cited:

> In all three cases, plaintiff sought injunctive relief[3] directed at certain systemwide law enforcement practices. The Court held in each case that, absent an allegation of a specific threat of being subject to the challenged practices, plaintiff have no standing to ask for an injunction.

Allen v. Wright, 468 U.S. 737, 760 (1984). This requirement that a plaintiff allege a specific threat is not met when the plaintiff can only show that the practice will be applied to her if a series of contingent events occur some time in the future. Lyons, 461 U.S. at 106 (describing contingencies and condemning them as insufficient); Rizzo, 423 U.S. at 372 (same); O'Shea, 414 U.S. at 496-97 (same).

In the present case, the plaintiffs would have to concede that all of the following events would have to occur before they could establish that they are threatened with a actual and imminent injury:

---

[3] As noted, no permissible distinction can be drawn between standing to seek an injunction and standing to seek a declaratory judgment. See, e.g., Houston v. HUD, 24 F.3d 1421, 1429 n.6 (1994) (plaintiffs seeking declaratory relief to prevent future illegal acts must show, under Lyons, that risk of injury is actual or imminent, not conjectural or hypothetical).

4

1. They intend to demonstrate in the future.

2. They will assemble in a building that is subject to inspection by a fire department.

3. As a result of the inspection, that fire department will be induced by the FBI to conduct a fire inspection or will have learned from the FBI how to use such inspections to disrupt demonstrations.

4. As a result of the inspection, the fire department will find sufficient fire code violations to require that the building to be used be closed.

5. The closing of that building will make it effectively impossible to meet and assemble any where else, such as in a building that does not have fire code violations.

6. The closing of the building and the absence of any alternative will, in itself, make it effectively impossible for plaintiffs to exercise their constitutional rights.

This case, therefore, falls precisely within the Supreme Court's prohibition on entertaining hypothetical attacks on law enforcement practices.

Ironically, a case on which plaintiffs rely supports this same conclusion. Specifically, they cite a case from the United States District Court for the Central District of California, [D2K Convention Planning Coalition v. Chief Bernard Parks, C.A. No. 00-8556 DDP (C.D. Cal. Aug. 11, 2000)](), in which the court allowed a challenge to a similar use of fire department inspections to thwart demonstrations at an upcoming Democratic National Convention. There will be time enough to determine the constitutionality of a fire inspection when plaintiffs return to the District of Columbia and are credibly and immediately threatened with the a similar use of a

District Columbia Fire Department inspection. Until then, the harm they claim is so theoretical, abstract, and contingent that it does not present a case or controversy.[4]

### *Arrest Records*

I conclude that plaintiffs' demand for the expungment of arrest and other records should be stayed until they first establish that their arrests were illegal.

Obviously, the court's power to order such expungement is derivative of its first finding that the underlying arrests were illegal. No one is seriously suggesting that a person can claim that it is illegal or unconstitutional for a government agency to maintain accurate records of a person's legitimate arrest. Thus, there is no reason to ascertain whether the government may maintain the records of plaintiffs' arrests until there is first a determination that their arrests were illegal. I, therefore, recommend that all action on this claim be stayed pending the result of the plaintiffs' action against the District of Columbia.

## CONCLUSION

For the reasons stated above, I recommend the following:

1. Defendants' motion for summary judgment be denied without prejudice;

2. The Court conclude that plaintiffs' demand for declaratory relief does not present a case or controversy within this Court's jurisdiction and, therefore, should be dismissed; and

3. Consideration and resolution of plaintiffs' demand for the expungement of arrest

---

[4] Plaintiffs note the use of similar techniques at the Republican National Convention, see Opp'n at 19-20, but that occurred several years ago.

and "derivative records" be stayed until after the resolution of whether the arrests in this case were illegal.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: August 9, 2006