UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BRIAN BECKER**, *et al.*,<br>Plaintiffs<br><br>v.<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Action No. 01-0811 (PLF/JMF) |

**MEMORANDUM OPINION**

This matter has been referred to me by Judge Friedman. Currently pending and ready for resolution is the Defendants' Second Renewed Motion for Leave to File Amended Answer [#337]. For the reasons stated herein, the Defendants' motion will be denied.

**I. Background**

This class action arises out of protests surrounding the World Bank and International Monetary Fund ("IMF") meetings of April 16-17, 2000. Complaint ("Compl.") [#1] ¶¶ 43, 44. The Plaintiffs, various nonprofit groups and individuals, brought suit against the District of Columbia, the Metropolitan Police Department ("MPD"), its officials and officers, and various federal agency defendants alleging, *inter alia*, violations of their First, Fourth, and Fifth Amendment rights; claims of excessive force; and common-law false arrest. Compl. ¶ 2. Relevant to this motion is the claim arising out of a mass arrest of 673 protestors that took place in the vicinity of 20th and I Streets NW on April 15, 2000, in conjunction with their march from the U.S. Department of Justice on 10th Street and Pennsylvania Avenue NW toward Dupont Circle. Id. ¶¶ 88-94. The circumstances of the arrests, bookings, and subsequent releases of the

arrestees are highly contested by the parties, but undisputed facts show that the processing of arrestees was lengthy and somewhat chaotic, with the final arrestee not having been booked until the following morning, April 16, 2000.  <u>Plaintiffs' Opposition to Second Renewed Motion for Leave to File Amended Answer</u> ("Pls. Opp.") [#340] at 13-14.  The Plaintiffs, on behalf of a class comprising those protestors arrested in the April 15, 2000 incident, brought this claim against the District of Columbia MPD, then-MPD Chief of Police Charles Ramsey, and then-Executive Assistant to the MPD Chief of Police Terrence Gainer in part alleging that the arrests violated the Fourth Amendment of the Constitution because they were undertaken without individualized probable cause.

Defendants now seek to amend their answer to add the affirmative defense of failure to mitigate damages, based on allegations that some of those arrested in conjunction with the World Bank/IMF protests refused to self-identify after being arrested, thereby prolonging their detentions.  <u>Defendants' Memorandum in Support of Second Renewed Motion for Leave to File Amended Answer</u> ("Defs. Mem.") at 2.  This evidence is disputed by Plaintiffs, who assert that the refusal to self-identify was undertaken by a different group of protestors, not members of this particular class.  Pls. Opp. at 3.  It is undisputed that approximately 150 persons arrested at some point during the protests did refuse to provide identification; these persons were eventually released on April 22, 2000, but the date and time at which they were arrested appears at this point to be undetermined.  <u>Id.</u>  The impact of this refusal to self-identify on the length of detention as opposed to any number of other factors is further disputed by the Plaintiffs.[1]  Pls. Opp. at 13-15.

---

[1] Plaintiffs argue that many factors contributed to length of detention, including to which bus an arrestee was assigned for transport to the receiving facility.  Pls. Opp. at 14.  There has been no discovery as to what factors may have affected length of detention or as to what the

## II. Analysis

The amendment of pleadings in civil matters is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 permits amendment under a relatively liberal standard; leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend is within the sound discretion of the trial court, however, it is an abuse of discretion to deny leave without a sufficient reason. Dove v. Wash. Metro. Area Transit Auth., 221 F.R.D. 246, 247 (D.D.C. 2004). A denial of leave to amend is appropriate in cases of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and/or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). The party opposing the amendment bears the burden to show why leave should not be granted. Dove, 221 F.R.D. at 247.

Defendants' Motion essentially argues they should be permitted to amend their answer on the basis of the policy that leave should be freely given to aid in the disposition of cases on the merits. Defs. Mem. at 6. Defendants assert that the amendment is timely following the certification of the class, as opposed to any time prior to certification, because the pool of plaintiffs to which the affirmative defense may be applicable expanded. Id. at 4-5. Plaintiffs argue in opposition that leave should be denied largely on the basis of undue delay, given that the Defendants offer little justification for waiting more than five years to first move to amend. Pls. Opp. at 20-21. Plaintiffs also raise the issue of burden and argue that allowing amendment at this stage, after discovery has closed, would be overly prejudicial. Id. at 23.

### A. *Undue Delay*

---

relative impact of any of these factors was. Id.

The Defendants' five-year delay[2] in bringing forth this new affirmative defense after discovery has closed is unsubstantiated and undue. Delays of anywhere between 38 months and eight years have been found to be undue, and therefore barred amendment of the pleadings. See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243 (D.C. Cir. 1987) (seven years after filing of complaint, after close of discovery and summary judgment); Doe v. McMillan, 566 F.2d 713, 720 (D.C. Cir. 1977) (38 months after initial pleadings); Abdullah v. Washington, 530 F. Supp. 2d 112, 115 (D.D.C. 2008) (five years after initial pleadings), app. dismissed, No. 08-7022, 2008 U.S. App. Lexis 9082 (D.C. Cir. Mar. 12, 2008). Equally significant in evaluating whether there has been undue delay is the status of the case at the time of the proposed amendment. Waiting to move to amend until after the close of discovery and after the filing of or ruling upon dispositive motions has been considered an undue delay. See Williamsburg Wax Museum, 810 F.2d at 247; Abdullah, 530 F. Supp. 2d at 115. Defendants in the present case waited over five years from the time of their initial answer until they first moved to amend, after discovery was closed, and some motions for summary judgment filed.

Further, the Defendants offer little justification and certainly no "sound reason" for waiting five years to assert this defense, providing a further bar against granting leave. See Doe v. McMillan, 566 F.2d at 720 (movants provided "no sound reason for failure to seek amendment earlier"); Preferred Meal Sys. v. Save More Foods, Inc., 129 F.R.D. 11, 12 (D.D.C. 1990) (denying motion to amend because defendant provided no justification for two-and-a-half year

---

[2] The Defendants first moved to amend their answer to add this affirmative defense in December 2006. It would unfairly prejudice Defendants to use the date of their Second Renewed Motion to determine how much time has elapsed, as they have attempted twice before to assert this defense, both times being dismissed without prejudice. Therefore, for the purposes of this motion, we assume a five-year delay (2001-2006) as opposed to an eight-year delay (2001-2009).

4

delay in seeking to add new defense and no indication that they only recently learned of the information). There is no assertion in the current Defendants' Motion that the information was only revealed during discovery; that is belied by the facts of the case. The Defendants had notice in 2001 that the Plaintiffs intended to pursue a class action regarding the mass arrests. See generally Compl.; Motion to Certify Class [#15] (Oct. 30, 2001). It therefore must be assumed that the Defendants conducted their discovery with an eye toward the possibility of a class action. The information about large numbers of arrestees refusing to self-identify was widely reported in the media at that time, and the Defendants cite those articles in their own motion. See Defs. Mem. at 3. The Defendants arguably have no more information now about the affirmative defense than they had in 2000 when the events occurred, and, as there was no discovery focused on these allegations, certainly no more than they had at the close of discovery in 2005. Why the Defendants did not assert this affirmative defense prior to or during discovery so that it could be probed while discovery was still being conducted is unknown and apparently without justification.

### *B. Prejudice to non-moving party*

In evaluating the possibility of prejudice to the nonmoving party, one significant factor is whether the amendment will require additional discovery. See Abdullah, 530 F. Supp. 2d at 115 (finding prejudice when discovery was closed); Nurriden v. Goldin, 382 F. Supp. 2d 79, 91 (D.D.C. 2005) (finding no prejudice when, *inter alia*, amendment would require no additional discovery), aff'd on other grounds, No. 05-CV-5386, 2007 WL 1126199 (D.C. Cir. Apr. 16, 2007), cert. denied, 128 S. Ct. 1473 (2008). In Abdullah, the Plaintiff's "real and substantial" discovery burden – he would have formulated his discovery differently and the new discovery

that would be necessary to rebut the affirmative defense had become largely inaccessible over the preceding five years of delay – amounted to prejudice barring amendment. Abdullah, 530 F. Supp. 2d at 115. The current Plaintiffs have a similar discovery problem. Discovery has long since closed and the Plaintiffs assert that they would have undertaken discovery differently and probed the allegation during discovery had they known of the District's intent to assert the failure to mitigate affirmative defense. Pls. Opp. at 23. The evidence now needed to address the affirmative defense would require extensive additional discovery, as the field arrest and booking records are either incomplete or nonexistent and there has been no information discovered as to the times of release. Id. at 6-10, 15. It likely will take extensive discovery to even determine if the defense applies to any of the class members, given the state of the records and the fact that more than 1,300 people were arrested and booked over the course of that weekend. The fact that discovery is closed and the amount of additional discovery that would be needed to properly rebut the affirmative defense prove too prejudicial to Plaintiffs to permit amendment for its assertion.

Allowing amendment after an unjustified five-year delay and causing the discovery phase to be re-opened in this now-eight-year-old case goes beyond the generous standard prescribed by the Federal Rules of Civil Procedure, and therefore, must be denied.

**III. Conclusion**

For the foregoing reasons, Defendants' Second Renewed Motion for Leave to File Amended Answer [#337] will be denied. An Order accompanies this Memorandum Opinion.

|  | /S/ |
|---|---|
| **Dated**: July 20, 2009 | **JOHN M. FACCIOLA**<br>UNITED STATES MAGISTRATE JUDGE |